FILED
JUN 06 2025
Clerk, U.S. District Court
Texas Eastern

+

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **JUSTIN TATUM,** | § | 6:25cv206 |
| **Plaintiff,** | § | |
| v. | § | |
| **ZIP CAPITAL GROUP, LLC,** a California Limited Liability Company | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is JUSTIN TATUM ("Plaintiff"), a natural person, resident of the Eastern District of Texas, and was present in Texas for all automated prerecorded phone calls in this case.

2. Defendant ZIP CAPITAL GROUP LLC ("Zip Capital") is a limited liability company organized and existing under the laws of California and can be served via registered agent Legal Zoom, 101 N Brand Blvd, #11, Glendale, California 91203.

3. Defendant FARID KARIMI ("Karimi") is a natural person, resident of California, Chief Executive Officer of Defendant Zip Capital, and can be served at 972 McCall Drive, Corona, California 92881.

### JURISDICTION AND VENUE

4. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

5. **Personal Jurisdiction**. This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves to Texas and this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation.

a. Defendants targeted Texas when marketing high-interest Merchant Cash Advance ("MCA") loans, including telephone solicitations, and regularly conducts business in this District.

b. Defendants called Plaintiff's Texas area phone number ending in 0700 to generate leads for Defendants.

c. These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendants, the forum, and the litigation that exceeds the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

6. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. He was residing in the Eastern District of Texas when he received a substantial if not every single, prerecorded phone calls from Defendant, which is the subject matter of this lawsuit.

7. This Court has venue over the Defendant because the phone calls at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**TEXAS BUSINESS AND COMMERCE CODE §302.101**

21. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State to make telephone solicitations inside the state of Texas or to residents in Texas.

22. "' Telephone solicitation' means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item."

23. "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." Tex. Bus. & Com. Code § 302.002.

24. A "seller" is defined as "A person who makes a telephone solicitation on the person's on behalf." Tex. Bus. & Com. Code §302.001(5).

25. A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

26. Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent

of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

27. The Plaintiff may seek damages of violations of Texas Business and Commerce Code § 302.101 of to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees

28. Texas Business and Commerce code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

29. The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

30. Defendant Zip Capital offers loan products designed as purchases, such as merchant cash advances, small business loans, SBA loans, equipment financing, traditional loans, and lines of credit, nationwide, including in the state of Texas.

31. Defendants routinely violates the TCPA as a part of its business model and knowingly and willfully commits TCPA violations.

32. Beginning in 2019, Defendant Zip Capital has been party to nine Federal lawsuits in which Defendant Zip Capital was accused of TCPA violations.

33. Defendants have not taken any measures to comply with Federal or State consumer telephone protection laws.

34. Defendant Karimi has not taken any measures to comply with any Federal or State consumer protection and/or privacy laws regarding telephone solicitations.

35. Defendant Karimi took knowing and willful steps to purchase equipment capable of recording prerecorded messages and sending prerecorded messages en masse to consumers in Texas.

36. At all relevant times, Plaintiff maintained and used a residential cellular telephone line with a phone number ending in 0700, the "0700 Number.".

37. At all times material hereto, Plaintiff was the subscriber of the telephone number ending in 4604 and paid his cell phone bill through T-Mobile.

38. Plaintiff's 0700 Number has been registered on the National Do-Not-Call Registry since October 2022.

39. Plaintiff registered the 0700 Number on the Do Not Call list to obtain solitude from invasive and harassing telemarketing calls. The telemarketing calls prevented Plaintiff from using his phone for legitimate purposes.

40. Plaintiff received twelve (12) prerecorded solicitation phone calls to the 0700 Number from Defendants soliciting their goods and services.

41. The phone calls were not related to any emergency purpose and were sent without Plaintiff's express written consent.

42. Each of the phone calls received in this instant action claimed that "Liberty Financial" was the company offering funding services.

43. On May 13, 2025, Plaintiff received a phone call that displayed 520-681-2616 on Plaintiff's caller identification. Plaintiff answered the phone, and a robotic monotone message from "Naomi from Liberty Financial" began to play. The message solicited business funding.

44. On May 14, 2025, Plaintiff received the same phone call as described in paragraph 40. The phone number displayed was spoofed, 209-896-8313.

45. On May 15, 2025, Plaintiff received a phone call that displayed 857-409-4385 on Plaintiff's caller identification. Plaintiff answered the phone, and a robotic monotone message from "Hayley from Liberty Financial" began to play. The message solicited business funding.

46. On May 16, 2025, Plaintiff received the same phone call as described in paragraph 42. The phone number displayed was a spoofed phone number, 262-331-6752.

47. On May 19, 2025, Plaintiff received the same phone call as described in paragraph 42. The phone number displayed was spoofed, 929-780-6525.

48. On May 20, 2025, Plaintiff received the same phone call as described in paragraph 40. The phone number displayed was spoofed, 224-204-1164.

49. On May 21, 2025, Plaintiff received the same phone call as described in paragraph 42. The phone number displayed was spoofed, 442-203-0093.

50. On May 23, 2025, May 26, 2025, and May 27, 2025, and May 29, 2025, Plaintiff received prerecorded messages soliciting business funding on behalf of "Liberty Financial."

51. On May 28, 2028, Plaintiff received the same phone call as described in paragraph 40. The phone number displayed was spoofed, 878-205-8144.

52. On May 29, 205, Plaintiff received a phone call that displayed 405-221-8848 on Plaintiff's caller identification. Plaintiff answered the phone call and a prerecorded message soliciting business funding began to play. The prerecorded message falsely stated "Liberty Financial" as the company selling business funding. The prerecorded message instructed Plaintiff to call 833-838-1172.

53. On May 29, 2025, Plaintiff, irritated by the repeated phone calls, called phone number 833-838-1172, for the sole purpose of determining who was responsible for the prerecorded phone calls.

54. Plaintiff was connected to "Fahad" who solicited Plaintiff for business funding.

55. Fahad, while still on the phone with Plaintiff, sent Plaintiff a text message stating, "Hi its Fahad with Zip Capital. I am the manager assigned to your file."

56. Fahad, while still on the phone with Plaintiff, sent Plaintiff a text message containing his email address, .

57. "Zcgdirect.com" is the email extension of Zip Capital Group LLC as displayed on their website at . The website lists an email address of

.

58. The text messages in paragraphs 52 and 53 reveal Defendant Zip Caital as the company responsible for the "Liberty Financial" prerecorded phone calls.

59. Table A below displays calls made to Plaintiff by Defendants:

TABLE A

| **Call:** | **Date:** | **Caller ID:** | **Time:** | **Outcome:** |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 1 | 05/13/2025 | 520-581-2616 | 9:07 AM | Prerecorded voice message |
| 2 | 05/14/2025 | 209-896-8313 | 9:05 AM | Prerecorded voice message |
| 3 | 05/15/2025 | 857-409-4385 | 8:51 AM | Prerecorded voice message |
| 4 | 05/16/2025 | 262-331-6752 | 9:51 AM | Prerecorded voice message |
| 5 | 05/19/2025 | 929-780-6525 | 9:49 AM | Prerecorded voice message |
| 6 | 05/20/2025 | 224-204-1164 | 3:53 PM | Prerecorded voice message |
| 7 | 05/21/2025 | 442-203-0093 | 5:34 PM | Prerecorded voice message |
| 8 | 05/23/2025 | 308-315-8661 | 10:37 AM | Prerecorded voice message |
| 9 | 05/26/2025 | 401-271-6875 | 10:37 AM | Prerecorded voice message |
| 10 | 05/27/2025 | 405-221-8848 | 10:37 AM | Prerecorded voice message |
| 11 | 05/28/2025 | 878-205-8144 | 10:44 AM | Prerecorded voice message |
| 12 | 05/29/2025 | 405-221-8848 | 12:37 PM | Prerecorded voice message |

60. Plaintiff searched the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp on June 1, 2025, and did not find a valid Texas Solicitation Registration for Defendant Zip Capital as required by Texas Business and Commerce Code § 302.101.

61. Defendant Zip Capital does not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

62. Defendant Zip Capital does not qualify for an exemption under Texas Business and Commerce Code § 302.101.

63. Defendant Zip Capital is not a publicly traded company.

64. Defendant Zip Capital does not possess a Texas Lending license.

65. Every call was placed without the maintenance of an internal do-not-call policy or

training of their agents/employees on the use of an internal do-not-call policy.

66. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

67. No emergency necessitated the calls.

**PERSONAL LIABLITY OF FARID KARIMI**

68. Defendant Zip Capital has been sued at least nine times in Federal Court amid accusations of violating the TCPA.

69. Defendant Karimi is the Chief Executive of Zip Capital and the person best equipped to stop Zip Capitals illegal behavior and has not taken any steps to curb the violations.

70. Karimi purchased the equipment used to record and transmit prerecorded voice message calls.

71. Karimi ordered the prerecorded phone calls to be placed.

72. Karimi wrote, or at least approved the script, of the prerecorded message phone calls.

73. Karimi is the driving force behind the robocalling campaign.

74. Karimi refuses to stop the illegal behavior and comply with Federal and state laws because it benefits him financially.

75. Texas allows for the holding of corporate officers personally liable when they directly participated in or authorized statutory violations. *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

76. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

77. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

78. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

79. Plaintiff has been harmed, injured, and damaged by phone calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, more frequent charging of his cell phone, and increased electric bills resulting from increased charging of his cell phone.

**Plaintiff's cell phone is a residential number**

80. The calls were to Plaintiff's cellular phone ending in 0700 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and does not primarily use the phone for any business purpose.

**Violations of the Texas Business and Commerce Code § 302.101**

81. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

82. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

83. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

84. Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

**FIRST CLAIM FOR RELIEF**
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(C))**
**(Against All Defendants)**

85. Plaintiff incorporates the preceding paragraphs 1-84 as if fully set forth herein.

86. Defendants called Plaintiff's private residential telephone number, which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

87. Plaintiff was statutorily damaged at least twelve (12) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telephone calls described above, in the amount of $500 per call.

88. Plaintiff is entitled to an award of up to $500 in damages for each such violation, 47 U.S.C. § 227(c)(5)(B).

89. Plaintiff is entitled to an award of up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**SECOND CLAIM FOR RELIEF**
**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**
**(Against All Defendants)**

90. Plaintiff incorporates the preceding paragraphs 1-89 as if fully set forth herein.

91. The foregoing acts and omissions of Defendants constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing prerecorded phone calls to Plaintiff's cellular telephone number without his prior express consent.

92. Plaintiff was statutorily damaged at least twelve (12) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500 per call.

93. Plaintiff was statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the Court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

94. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

**THIRD CLAIM FOR RELIEF**
**(Violations of The Texas Business and Commerce Code 302.101)**
**(Failure to Register to Telephone Solicit in Texas)**

95. Plaintiff incorporates the preceding paragraphs 1-94 as if fully set forth herein.

96. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code § 302.101 by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

97. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code § 302.302(a).

98. Plaintiff is entitled to all reasonable attorneys' fees, deposition costs, and discovery costs. Texas Business and Commerce Code § 302.302(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Justin Tatum prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that the actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and its affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1,500 per call in statutory damages arising from intentional violations of the TCPA § 227(C) for twelve (12) calls;

E. An award of $1,500 per call in statutory damages arising from intentional violations of the TCPA § 227(B) for twelve (12) calls;

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce Code § 302.101;

G. An award to Mr. Tatum of damages, as allowed by law under the TCPA;

H. An award to Mr. Tatum of interest, costs, and attorneys' fees, as allowed by law and equity;

I. Such further relief as the Court deems necessary, just, and proper.

June 6, 2025 Respectfully submitted,

Justin Tatum
Plaintiff, Pro Se
471 Utah Avenue
Tyler, TX 75704
469-901-0700
justinltatum@outlook.com

## I. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: June 6, 2025

Justin Tatum
Plaintiff, Pro Se
471 Utah Avenue
Tyler, TX 75704
469-901-0700
justinltatum@outlook.com